**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RONALD LUBER,**

               **Plaintiff,**

               **v.**                  **1:03-CV-0493
                                                       (GLS/RFT)**

**TRACI ROSS, KATHY MCLAUGHLIN,
WARREN COUNTY,**

               **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**

RONALD LUBER
Plaintiff, *Pro se*
23309 Ford Road
PMB 184
Dearborn, MI 48128

**FOR THE DEFENDANTS:**

Burke, Scolamiero Law Firm       THOMAS J. MORTATI, ESQ.
302 Washington Avenue Extension
P.O. Box 15085
Albany, NY 12212-5085

Phelan, Phelan Law Firm          TIMOTHY S. BRENNAN, ESQ.
302 Washington Avenue Extension
P.O. Box 15085
Albany, NY 12212-5085

**Gary L. Sharpe**

**U.S. District Judge**

**DECISION AND ORDER**

## I. Introduction

Pending before this court is a motion for summary judgment by the defendants.[1] Plaintiff *pro se* Ronald Luber filed a civil rights complaint pursuant to 42 U.S.C. § 1983, contending, *inter alia*, that defendants violated his due process rights. For the following reason, the motion for summary judgment is GRANTED.

## II. Procedural History

On April 21, 2003, Luber filed his complaint alleging that a child abuse investigation conducted by the defendants infringed upon his due process rights. *See Dkt. No. 1*. On June 2, Judge David N. Hurd issued an order that dismissed the suit as to most of the defendants,[2] and ordered Luber to file an amended complaint. *See Dkt. No. 4.* On July 2, Luber filed

---

[1] Traci Ross, Kathy McLaughlin and Warren County.

[2] The defendants, Sharon Luber Sprague, Margaret Graves, Frank Isele, Mountainside Christian Academy, William Bowman, Betsy Oris, Robert M. Kelly, Hon. J. Timothy Breen, New York State Office of Children and Family Services, New York State Commission on Judicial Conduct and the County of Warren were dismissed from the original complaint. *See Dkt. No. 4.*

an amended complaint which was served upon the remaining defendants.[3] *See Dkt. No. 6.* On August 18, the defendants filed an answer. *See Dkt. No. 7.* On August 19, this case was reassigned to Judge Lawrence E. Kahn.[4] *See Dkt. No. 9.* On December 9, a pretrial scheduling order was entered.[5] *See Dkt. No. 18.*

On October 18, 2004, Luber filed a motion for summary judgment. *See Dkt. No. 38.* On November 1, the defendants filed an opposition brief. *See Dkt. No. 40.*[6] On December 29, 2004, this court denied Luber's motion for summary judgment. *See Dkt. No. 50.*

On July 12, 2005, defendants filed a motion for summary judgment. *See Dkt. No. 68.* All responsive pleadings have now been filed.

### III. **Facts**

---

[3] Luber filed his amended complaint naming some of the same defendants that were previously dismissed and District Judge Hurd dismissed them again. *See Dkt. No. 6.* However, Warren County was reinstated as a defendant in the amended complaint despite being previously dismissed. *See id.*

[4] District Judge Hurd recused himself from this matter due to his son's employment with defense counsel's firm. *See Dkt. No. 9.*

[5] Pursuant to this order, the discovery period was set to expire on May 31, 2004. *See id.*

[6] During the pendency of these motions, the defendants requested that to Magistrate Judge Treece extend the discovery deadline. *See Dkt. No. 44.* The request was granted and discovery was extended until January 18, 2005.

Defendant Traci Ross is a case worker at the Warren County Department of Social Services (DSS), Child Abuse Division. Kathy McLaughlin is Ross' supervisor. At the time of the facts alleged in the complaint, Luber was permitted supervised visitation with his minor daughter for a period of six hours per week. On January 24, 2002, DSS received a hotline call alleging that Luber was sexually abusive to his daughter. *Defs. Statement of Material Facts ¶ 4, Dkt. No. 68, Ex. 17.* The caller claimed that Luber would seek inappropriate affection from his daughter, including kissing her on the lips and fondling her buttocks in public. *See Intake Report, Dkt. 68, Ex. E.* It was also reported that Luber would repeatedly engage in such acts despite the visible discomfort of his daughter and after he had been asked to stop. *Id.*[7]

On January 28, 2002, four days following the hotline call, a notification letter was sent to Luber regarding the pending investigation against him. *Defs. Statement of Material Facts ¶ 5, Dkt. No. 68, Ex. 17, (Letter, Ex. E).* Luber contends that the letter was not sent to

---

[7]During the course of the investigation it was also discovered that Luber had a history of two other Child Protective Services reports in Kentucky, one was indicated for lack of shelter, the other was an unfounded claim of sexual abuse. *Defs. Statement of Material Facts ¶ 10, Dkt. No. 68, Ex. 17.* The investigation also uncovered a recurring incident in Indiana, where Luber made his daughter powder his genital region. *Id. at ¶ 11.*

4

him until after the investigation was closed in late February. *Pl. Statement of Material Facts ¶ 5, Dkt. No. 72*.

On February 13, 2002, Melissa Bucher of Child Protective Services attempted to perform an unannounced home visit at Luber's residence. *Id. at ¶¶ 17-20*. Bucher reported that he refused to let her in and advised her that he wanted an attorney before answering any questions. *Id.* Luber denies that he was hostile to Bucher, and maintains that he was willing to cooperate with DSS throughout the investigation. *Pl. Statement of Material Facts ¶ 20, Dkt. No. 72*.

On February 15, 2002, caseworker Ross contacted Dr. Isele, a psychologist who had examined the minor child. *Defs. Statement of Material Facts ¶¶ 20-1, Dkt. No. 68, Ex. 17*. Dr. Isele reported that he "questions the relationship" between Luber and his daughter. *Id.* Dr. Isele further reported that Luber had inappropriate conversations with his daughter about adult things and it was his belief that the child was being manipulated and "parentified." *Id.*[8]

---

[8]Parentification refers to children or adolescents assuming adult roles before they are emotionally or developmentally ready to manage those roles successfully. *http://www.ncbi.nlm.nih.gov (last visited Nov. 30, 2005)*.

5

The investigation was closed and approved on February 21, 2005. *Id. at ¶¶ 25-6.* The initial claim of sexual abuse was found to be unsubstantiated because there was no credible evidence that Luber's conduct was for the purpose of sexual gratification. *Id.* He, however, was indicated for inappropriate guardianship and was found to be of a moderately high risk to his minor daughter. *Id. See also Summary Report, Dkt. No. 68, Ex. E.*

Luber pursued an administrative appeal through the New York State Office of Children and Family Services. *Defs. Statement of Material Facts ¶¶ 30-2, Dkt. No. 68, Ex. 17.* A hearing was scheduled for July 1, 2003. *Id.* Luber, however, subsequently withdrew from the appeal process. *Id.*

### IV. Analysis

**A.   Summary Judgment Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986);

6

*accord FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  It is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party.  *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir. 1999).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999).  "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *Dister v. Cont'l Group*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted).  Moreover, "[c]onclusory allegations, conjecture and speculation... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  "While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence."  *Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 515 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 56(e)).   "As to materiality, the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.

**B.     Fourteenth Amendment**

7

In his amended complaint, Luber asserts that his rights were violated under the Fourteenth Amendment. *Am. Compl. ¶ 3, Dkt. No. 5.* More specifically, he contends that the defendants' actions prevented him from receiving due process under the law. *Id. at ¶¶ 3, 8.*

The due process clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *U.S. Const. amend. XIV § 1.* The first step in any Fourteenth Amendment inquiry is to identify the deprivation caused by the state action. See *Nicholson v. Williams*, 203 F. Supp.2d 153, 233 (E.D.N.Y. 2002). If the deprivation is not of life or property, the second question becomes whether or not the deprivation infringes upon a liberty interest protected by the Constitution. *Id.*

"Choices about marriage, family life, and the upbringing of children are among associational rights the Court has ranked of 'basic importance in our society'...rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *Nicholson*, 203 F. Supp.2d at 233-237 (citing *M.L.B v. S.L.J.*, 519 U.S. 102, 116 (1996)). The due process clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care,

8

custody, and control of their children. S*ee generally Troxel v. Granville*, 530 U.S. 57 (2000). Moreover, among the rights retained by the family against state interference is a constitutionally protected interest in decisions involving the formation of a family, including marriage and procreation. *See e.g. Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). Parents also have a constitutionally protected interest in the control and raising of their children without state interference. *See e.g. Parham v. J.R.*, 442 U.S. 584 (1979) (holding that parents have a right to make decisions involving a child's medical treatment); *see e.g. Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) (holding that parents have a right to make decisions regarding a child's education). Family members also have an interest in familial integrity or not being forcibly separated. *See generally Quiloin v. Walcott*, 434 U.S. 246, 255 (1978).

These rights held by family members are considered fundamental liberty interests. When a fundamental liberty interest is at stake there are two potential tracks of Fourteenth Amendment analysis. *Nicholson*, 203 F. Supp.2d at 236. First, procedural due process requires that the government follow certain procedural rules before a right-holder's interest

9

is infringed. *Id*; s*ee also Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000). Second, substantive due process applies where, regardless of the procedures followed, a governmental decision violates a fundamental liberty interest. *Id. at 237.*

Here, Luber asserts that there were numerous violations of his due process rights during the course of the child abuse investigation conducted by the defendants. He contends that the defendants failed to provide him with a written notice of a pending abuse investigation within seven days as required under the agency's program manual. *Am. Compl. ¶ 3, Dkt. No. 8.* He further claims that the subject investigation was closed even though there was still an additional 30 days under New York law to complete the investigation. *Id. at ¶ 14.* Finally, Luber generally alleges that the defendants fabricated evidence in their summary report to his detriment. *Id. at ¶ 16.*

As a threshold matter, however, Luber has failed to show an actual deprivation as a result of state action. More specifically, the investigation did not infringe upon a constitutionally protected liberty interest. At best, he makes speculative claims as to the investigation's possible tangential

effects on his interests as a father.[9]  For example, Luber points to the fact that the allegedly false summary report may have been used against him in a separate custody dispute.  *See Am. Compl. ¶ 20, Dkt. No. 5.*  He also speculates that the summary report may have been a factor in a family court order allowing his wife to move out of New York state with his daughter.  These contentions, however, even if true, do not amount to a protected legal interest in violation of the Constitution.  Accordingly, defendants' motion for summary judgment is GRANTED.

## C. **Qualified Immunity**

In the alternative, even if this court found he had a due process claim, his claims are barred under the doctrine of qualified immunity.

Government agents enjoy qualified immunity when they perform discretionary functions if either (1) their conduct "did not violate clearly established rights of which a reasonable person would have known," or (2) "it was objectively unreasonable to believe that [their] acts did not violate

---

[9] Assuming *arguendo* that Luber contends that the investigation interfered with his visitation rights, which he does not, this is not a valid claim.  As a non-custodial parent Luber does not have a fundamental liberty interest in his visitation rights under these circumstances. *See generally Young v. County of Fulton*, 160 F.3d 899 (2d Cir. 1998) (holding that a mother did not have a due process right to a pretermination hearing before suspension of her visitation rights).

11

these clearly established rights." *Young* 160 F.3d at 899 (quoting *Soares v. Connecticut*, 8 F. 3d 917, 920 (2d Cir. 1993) (internal quotations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). To determine whether a right was clearly established, the court must ask: (1) was the law defined with reasonable clarity, (2) had the Supreme Court or Second Circuit affirmed the rule, (3) would a reasonable defendant have understood from the existing law that the conduct was unlawful. *See Anderson v. Recore*, 317 F.3d 194 (2d Cir. 2003) (citations omitted). Even in the absence of binding precedent, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right...[and] [t]he unlawfulness must be apparent." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Moreover, "the violation of state family law is not a benchmark for evaluating whether or not there has been a federal constitutional violation. '[A] violation of state law neither gives the plaintiff a § 1983 claim nor deprives state actors of the defense of qualified immunity.'" *See Robinson v. Via*, 821 F.2d 913, 922 (2d Cir. 1987). Within the context of summary judgment, the issue instead is whether a reasonable jury, looking at the

12

evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendants to believe that [they were] acting in a fashion that did not clearly violate an established *federally* protected right." *See Robinson*, 821 F.2d at 921(quoting *Halperin v. Kissinger*, 807 F.2d 180, 189 (Scalia, Circuit Justice, D.C. Cir. 1986) (emphasis added).

Here, despite the due process violations Luber claims under state law, he has failed to identify a clearly established federal right infringed by the defendants' conduct. Thus, defendants are entitled to qualified immunity. Based on the above, Defendants' motion for summary judgment must be **GRANTED** and Luber's complaint **DISMISSED**.

**IT IS SO ORDERED.**

January 5, 2006
Albany, New York

*[signature]*
Gary L. Sharpe
U.S. District Judge

13